Theodore G. SCOTT et al., Respondents,

v.

James C. KIRKPATRICK, as Secretary of State of the State of Missouri, Appellant.

No. 58584.

Supreme Court of Missouri, En Banc.

Sept. 11, 1974.

Cullen Coil, Jefferson City, for respondents; Carson, Inglish, Monaco & Coil, Jefferson City, of counsel.

D. Jeff Lance, Cook, Murphy, Lance & Mayer, St. Louis, for defendant.

Per Curiam:

This is a declaratory judgment action involving the question of whether the signers of an initiative petition proposing an amendment to the state constitution are required to be registered voters. The trial court held they are not. We hold they are, and reverse.

Theodore G. Scott, et al. (plaintiffs), residents and interested persons, allege in their petition that they seek to circulate and secure signatures of legal voters on an initiative petition proposing an amendment to the state constitution which would increase the revenue of the state conservation commission; that the secretary of state (defendant) has informed them that he will, on advice of counsel, refuse to accept for filing or to certify for inclusion on a ballot any proposition for amendment of the constitution proposed by initiative unless the number of signatures required by law on the petition are the signatures of registered voters; that defendant has stated that § 27 [1] of Act 139 [2] of the first reg-

---

[1]. Designated by the Committee on Legislative Research as § 1.035, RSMo Supp.1973, V.A. M.S.

[2]. Sections 1 through 26 of the Act have been designated by the Committee on Legislative Research as, respectively, §§ 114.011 through 114.146, RSMo Supp.1973, V.A.M.S.

Act 139, applicable " * * * in all elections except those in cities and counties having

a board of election commissioners," provides that "[n]o person shall be permitted to vote in any election unless he is duly registered * * *." The practical effect of the adoption of this law in 1973 is that Missouri now has statewide registration of voters, because the law has for some time required registration in cities and counties having a board of election commissioners.

ular session of the 77th General Assembly requires that he take this position and he will continue to do so. Defendant admits these allegations, but states that he does not rely solely on § 27.

Plaintiffs further allege, and they contend on this appeal: (1) that correctly construed, the language of § 27, supra,[3] "does not prohibit 'legal voters' who are nonregistered from * * * signing and being counted in the total of signatures required by law on initiative * * * petitions," but permits those not registered to sign and their signatures to be counted in the total number required for such petitions; (2) that if defendant's interpretation is correct, then § 27 is unconstitutional, because (a) it would be in violation of Article III, §§ 49 and 50 of the constitution[4] authorizing "legal voters" to sign such petitions; and (b) it would be in violation of Article III, § 23, requiring that no bill contain more than one subject clearly expressed in its title; (3) that any law providing that registered voters only may sign initiative petitions would be and is unconstitutional, because it is in violation of Article III, §§ 49 and 50; and (4) that the trial court correctly ruled that Act 139 does " * * * not prescribe or purport to prescribe whether the signers of initiative * * * petitions must be registered voters."

The prayer of plaintiffs' petition was that the court by its judgment declare (1) that the correct construction of § 27 of Act 139 is that "voter" means either registered voter or legal voter, or, failing in that, that § 27 be declared unconstitutional; (2) that signers of initiative petitions need not be registered voters; (3) that legal voters may sign initiative petitions; and (4) that defendant be directed to certify for inclusion on a ballot a proposition for amend-

ment of the constitution where the required number of signatures presented on an initiative petition are those of legal or registered voters or both.

Defendant admits that he will refuse to certify for inclusion on a ballot an initiative proposition to amend the constitution unless the number of signatures required by law on the petition be those of registered voters. He denies the conclusions of plaintiffs' petition and, praying for a judgment in his favor, asserts in his answer, and he contends on this appeal, that the effect of Act 139, interpreted and considered in context with applicable provisions of the constitution and other statutes, is to provide that the signatures of registered voters only may be counted in determining whether an initiative petition has the number of signatures required by law.

We have the view, as did the trial court, that § 27 of Act 139 has no application to, and therefore could have no influence upon the decision of, the question presented in this case. Hence, it would serve no purpose to construe that section. It necessarily follows that we may not consider the attack made upon its constitutionality. However, we do not agree that State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S. W. 327 (banc 1920) followed and relied upon by the trial court, and heavily relied upon by plaintiffs in their brief and argument, controls our decision. Other sections of the statutes implementing applicable sections of the constitution lead logically to the conclusion we have reached, particularly § 126.151, RSMo Supp.1971, which provides who may sign initiative and referendum petitions.

Article VIII, § 2,[5] of the constitution states the general qualifications of voters as follows: " * * * citizens of the United States * * * over the age of

---

3. "Whenever the word 'voter' is used in the laws of this state it shall mean registered voter, or legal voter."

4. References to the constitution are to Constitution of Missouri, 1945, as amended, V.A. M.S.

5. See also § 111.021, RSMo 1969, V.A.M.S. Section 111.021 was amended in 1969 (Laws 1969, S.B. 134) to provide the same qualifications for those who may register.

twenty-one [6] who have resided in this state one year, and in the county, city or town sixty days next preceding the election at which they offer to vote * * *."

Article VIII, § 5, of the constitution states that "[r]egistration of voters may be provided for by law." As indicated, Act 139 (§§ 114.011 through 114.146 and § 1.-035, RSMo Supp. 1973, V.A.M.S.) and the statutes applicable to registration in cities and counties having a board of election commissioners [7] provide for the registration of voters and implement this article and section of the constitution.

Article III, §§ 49 through 53, of the constitution provide for the initiative and referendum. Section 50 provides, insofar as pertinent to this case, that "[i]nitiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state * * *."

Chapter 126, RSMo 1969; V.A.M.S., implements the initiative and referendum sections of Article III. Section 126.011(2), RSMo Supp.1971, V.A.M.S., defines "qualified voter" as "one who is qualified to vote under the provisions of section 111.021, RSMo [1969, as amended V.A.M.S.]."

Section 126.151, supra, in pertinent part, states: "Every person who is a qualified voter of the state of Missouri may sign a petition for the * * * initiative of any measure on which he is legally entitled to vote. * * *." We have the view that this section of the Chapter of our statutes on Initiative and Referendum states very clearly those who may sign initiative petitions, and that not only does it not offend against, but, on the con-

trary, properly implements and supports applicable constitutional provisions. Neither it nor the laws requiring registration of qualified voters are subject to the charge that they are unconstitutional on the ground they add to the qualifications a voter must meet.

Simply stated, § 126.151 says that any person may sign an initiative petition who is a qualified voter and who at the time it is presented to him is legally entitled to vote on the measure it proposes.

Who is a qualified voter legally entitled to vote? He is a person who meets both the qualifications prescribed by Article VIII, § 2, and the requirement of §§ 114.011 through 114.146 and the statutes referred to in footnote 7, that he be registered to vote. As stated, with the enactment in 1973 of Act 139, registration of voters is now required statewide and unless a person is registered he is not at any time legally entitled to vote.[8]

The effect of requiring registration as a condition for permission to vote is to create an additional "qualification" not prescribed by Art. VIII, § 2. It will be said that this requirement will effect an amendment of that article and section by a process not authorized by the constitution. Not so. In the first place, it is not an amendment. In the second, § 5 of the same article of the constitution authorizes provision by law for the registration of voters in which is inherent the authority to require that a person be registered in order to be legally entitled to vote. Hence, the additional "qualification" is authorized by the constitution.

It follows from this that the signature of a person otherwise qualified, but not

6. Now age 18 or older as required by the 26th Amendment to the United States Constitution adopted June 30, 1971.

7. Sections 113.010 through 113.420 (applicable to counties [St. Louis] of 700,000 inhabitants); §§ 113.490 through 113.870 (applicable to Jackson county outside Kansas City); and Chapters 117 (applicable to cities of 300,000 to 700,000 inhabitants); 118 (applicable to cities over 600,000 inhabitants [city of St. Louis]); and 119 (applicable to coun-

ties [Clay] containing a city over 400,000 inhabitants), RSMo 1969, V.A.M.S.

8. A very limited exception appears in §§ 111.-031 and 111.041 which provide a method whereby unregistered persons who have resided in this state for more than 30 days and less than one year may vote for presidential and vice-presidential electors but for no other officers.

registered, to vote is not acceptable on an initiative petition proposing an amendment to the constitution, because he is not at the time legally entitled to vote on the measure it proposes. Accordingly, we hold that the signers of an initiative petition are required to be registered voters.

As indicated, we have considered State ex rel. Westhues v. Sullivan, supra. That was an action to enjoin the secretary of state from accepting and filing a petition for referendum of the Workmen's Compensation Act, and to enjoin the attorney general from preparing a ballot title for that proposition. The extent of the decision of this court was that the action was premature as to both parties and it was ordered to be dismissed for that reason. Recognizing that a new suit might be brought involving other questions urged on that appeal (224 S.W. at 333), including, inter alia, the question posed in the instant case, the court undertook to answer those questions. In doing so the court observed that signers of a referendum petition need not be registered voters. (224 S.W. at 340–341). We note that the respondents in that case cited what is now § 126.151 (then § 6755, RSMo 1909) in support of a part of point 8 of their brief (283 Mo. at 560, 224 S.W.) that "[i]n places where registration is required by law * * * [it was] intended that none but registered voters should sign initiative * * * petitions." However, the court did not refer to or discuss this section and we cannot conclude that it considered its effect. To the extent that *Westhues* is inconsistent with today's decision, it should not be followed.

The judgment is reversed.

SEILER, Judge (dissenting).

I respectfully dissent.

I submit the majority opinion violates the cardinal rule that constitutional provisions relating to initiative and referendum are to be given a liberal construction to effectuate the policy adopted by the people—namely, that they solemnly reserve unto themselves the power to initiate laws and constitutional amendments. See State ex rel. Voss v. Davis, 418 S.W.2d 163 (Mo.1967). The majority opinion operates to limit the right of initiative or referendum, to make it more difficult to launch either one, because now a signer must not only be a qualified voter, he must also register in order to sign.

There is nothing in our constitution which so provides. The requirement that the signer of an initiative petition be a legal voter has been the same ever since the initiative and referendum were added to the 1875 constitution in 1908 and then carried forward in the 1945 constitution. In the history of the state there have been many elections where initiative or referendum propositions were submitted. Everyone knows that thousands of the signatures on the petitions which proposed those measures were signatures of voters who were not registered, because many parts of Missouri did not have registration until recently. The same constitutional provisions were in force then as are in force today. All the constitution required was that the signers be "legal voters." Now we are saying that although the constitution still reads "legal voters", the language suddenly has become "registered voters."

Surprisingly, the per curiam opinion avoids any discussion of the meaning of the words "legal voter" as adopted by the people and appearing in the constitutional provisions on initiative and referendum, Art. III, Sec. 50. The per curiam deals with the question as though the constitution used the words "qualified voter" in prescribing who can sign an initiative petition.

When the voters adopted the 1945 Constitution, the law then was that a signer of an initiative petition need not be a registered voter—only a legal voter. This court so held in State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327 (banc 1920), which the per curiam recognizes it must overrule in order to arrive at the result it does. The Westhues decision spe-

cifically said that the words "legal voters" as used in the Missouri Constitution pertaining to signers of initiative petitions did *not* mean registered voters, 224 S.W. 1 c. 340. Overruling the Westhues decision in 1974 does not change the fact that when the people adopted our present constitution in 1945, with Art. III, Sec. 50 containing the words "legal voter" as the only requirement to sign an initiative petition, they were presumed to be aware this court had already stated that "legal voter" did not mean "registered voter", so far as signing an initiative petition is concerned. "The rule is firmly settled that the adoption in a later Constitution of the words and context of another, which had been construed by a court of last resort, is presumed (in the absence of a contrary intention) to have been done to give the adopted words their adjudicated meaning . . . ", Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196, 199 (banc 1918); Rathjen v. Reorganized School District R–11, 365 Mo. 518, 284 S.W.2d 516 (banc 1955). This rule is recognized in the other decision handed down this same day, State ex rel. Socialist Workers' Party of Missouri v. Kirkpatrick, Mo., 513 S.W.2d 346 where the court says that when the legislature adopted in 1969 a law using the words "qualified voters", it was presumed to have been aware of a decision of this court almost one hundred years ago in 1878, Woodson v. Brassfield, 67 Mo. 331, defining the term "qualified voter."

As said, the per curiam avoids all this by saying nothing about the meaning of the words "legal voter" as they appear in the constitutional provisions dealing with the initiative, although it is our responsibility and ours alone to construe our constitution.

The per curiam also fails to meet the point that historically and politically reg-

istration has nothing to do with initiative and referendum. Registration is a type of police regulation dealing with what a citizen must do in order to vote in an election. " . . . The primary purpose of registration laws is to prevent fraudulent abuse of the franchise, by providing in advance of elections an authentic list of the qualified voters . . . " State ex rel. Hay v. Flynn, 235 Mo.App. 1003, 147 S.W. 2d 210, 211 (1941); Dysart v. City of St. Louis, 321 Mo. 514, 11 S.W.2d 1045, 1050 (banc 1928). " . . . The purpose of registration statutes is to protect the purity of the ballot box by ascertaining before the vote is cast whether such person possesses the qualifications to vote, and by preventing impersonation thereafter at the polls." 25 Am.Jur.2d Elections, Sec. 95, p. 784. . There is no election before us. No one is voting by signing the initiative petition under consideration. The signing of an initiative petition pertains to getting the proposition up for a vote. It does not involve voting in any way. There is no guarantee, or requirement, that a signer of an initiative petition will vote one way or the other or even vote at all in the subsequent election held on the measure proposed.

Respondents contend there are many abuses and forgeries in the initiative and referendum process, which can be corrected only by making registration applicable to petition signing qualifications. Perhaps so, but these are policy and political arguments and considerations, to be addressed not to us but to the people of the state to induce them to amend the constitution if they desire to make such a change. This court should not take upon itself the power of amending the constitutional provisions on initiative and referendum by construing into them the requirement of registration (or saying that the legislature can do so by statute) [1] and

---

1. The per curiam reasons that Sec. 126.151, R.S.Supp.1971 means that in order to sign an initiative petition, the person must be a qualified voter and must also, at the time the petition is presented to him, be legally

entitled to vote on the measure it proposes, hence, he must also be a registered voter in order to sign. This approach, however, overlooks the fact that initiative petitions are, of necessity, circulated months before the

thereby impair and restrict the right which the people have reserved unto themselves to initiate laws and constitutional amendments.[2]

Further, as a result of today's decision, the constitutional provision as to who can sign an initiative petition will be amended every time the legislature changes the laws on registration. So long as statewide registration prevails, "legal voters" means "registered voters". At any time statewide registration does not prevail, "legal voters" does not mean "registered voters". In my opinion, the constitutional provision on who can sign an initiative petition is not subject to being changed this way.

Art VIII, Sec. 2 prescribes the qualifications for voters. All that is required is to be of a certain age and meet certain residence requirements. Registration does not and cannot add to or detract from these constitutional qualifications. Art. III, Sec. 50 gives "legal voters" the constitutional right to sign initiative petitions. That constitutional right to petition which accrues to one who meets the age and residence voting requirements of the constitution should not continue to exist or disappear depending on what the legislature chooses from time to time to do about registration.

election at which the proposed measure, if it gets on the ballot, will be voted on. There is no way the person can vote on the measure at the time the petition is presented to him. Whether or not he is legally entitled to vote on the measure will depend on what his status is at the time of the election. So I have difficulty in reading Sec. 126.151 as requiring registration as of the time of signing the petition.

This view is strengthened by the remainder of Sec. 126.151, which sets forth penalties for those who sign an initiative petition illegally. It penalizes upon conviction, among others, a person "who is not at the time of signing the same a qualified voter of the state." It says nothing about having to be registered to sign or being legally entitled to vote on the proposed measure in order to sign. This supports the view that the legislature did not intend registration as a requirement for signing. In fact, if the per curiam is correct, all those persons who signed the initiative petitions before us who were not registered voters at the time would

be guilty of violation of Sec. 126.151 and subject to up to two years imprisonment in the penitentiary. This extreme result demonstrates the illogic of the conclusion drawn in the per curiam.

2. It should be noted that the constitutional language of Art. III, Sec. 53, prescribing the basis for the compilation of the number of signatures required for an initiative or referendum petition, uses non-registered as well as registered voters. The measuring rod is a percentage of the total vote for governor at the last general election. That would be the 1972 election in the case before us and no one would contend that voters living in areas where registration was not required did not vote in that election. Thus, the secretary of state must use a figure which includes non-registered as well as registered voters in determining whether there are sufficient signatures on the present petitions. This is not consistent with the view that only registered voters can sign a petition.